IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 05-cv-01456-MSK-MEH

JAMES SCHWAB,

      Plaintiff,

v.

CARMEN MARTINO,

      Defendant.
_____

**OPINION AND ORDER GRANTING MOTION FOR NEW TRIAL, AND
GRANTING MOTION TO EXCEED STATUTORY CAP**
_____

      **THIS MATTER** comes before the Court pursuant to the Defendant's Motion for New Trial **(# 120)**, the Plaintiff's response **(# 122)**, and the Defendant's reply **(# 124)**; and the Plaintiff's Motion for Finding of Justification for Exceeding **(# 121)** a statutory cap on non-economic damages, the Defendant's response **(# 123)**, and the Plaintiff's reply **(# 125)**.

      This action arises from a motor vehicle accident in 2005. The Plaintiff was riding a motorcycle through an intersection in which he had the right of way, when the Defendant, driving a motor home, turned left in front of the oncoming Plaintiff. The parties collided, and the Plaintiff sustained serious injuries. The Plaintiff commenced this action, and proceeded to trial before a jury on a single claim of negligence. On October 4, 2007, the jury returned a verdict in favor of the Plaintiff, awarding $1 million in non-economic damages, $650,000 in economic losses, and $350,000 in damages for permanent physical impairment.

Both parties have now filed post-verdict motions addressing the jury's award. The Defendant moves for a new trial, or, in the alternative, remittitur **(# 120)** with respect to the jury's award of economic damages. The parties stipulated that the Plaintiff's past medical expenses amounted to $324,374.99, but the Defendant contends that the Plaintiff put on no concrete evidence of the cost of anticipated future medical expenses. Thus, the Defendant argues, the jury's award, to the extent it exceeded $324,375, is unsupported by the record.

The Plaintiff moves **(# 121)** the Court for a finding permitting the Plaintiff to recover for non-economic losses in excess of the statutory cap of C.R.S. § 13-21-102.5(3)(a). That statute provides that an award of damages for non-economic injuries shall not exceed $366,250. However, if the Court finds "justification by clear and convincing evidence therefor," it can allow a non-economic damage award up to $732,500.[1] *Id.* The Plaintiff argues that there is sufficient evidence of discomfort resulting from his injuries to warrant the higher cap.

**A. Motion for New Trial**

Turning first to the Defendant's motion, the Court's review is limited to determining whether the jury's award is supported by substantial evidence. *Dodoo v. Seagate Technology, Inc.*, 235 F.3d 522, 531 (10th Cir. 2000). The jury's award can be supported by any competent evidence tending to sustain it. *See Guides, Ltd. v. Yarmouth Group Property Mgt.,* 295 F.3d 1065, 1076 (10th Cir. 2002).

Both parties have recited the evidence that they believe was received at trial with regard to this issue, but neither party has supplied the Court with a transcript of the proceedings in support

---

[1] The statute provides that the standard cap is $250,000, and the absolute cap is $500,000, with both sums indexed for inflation. It is undisputed that the caps currently stand at $366,250 and $732,500.

2

of their contentions. Consequently, the parties' representations are not particularly helpful. Often, a party's recollection of the evidence that was received at trial differs markedly from what is actually contained in the record. Whether because the evidence came in differently than the parties expected, because the parties' own perceptions colored their interpretation of the evidence, or because the parties' memories are imprecise, reliance upon anything but the transcript of record to demonstrate the sufficiency *vel non* of the evidence is impractical.

Nevertheless, the Court has reviewed the Court Reporter's real-time transcript of the proceedings.[2] In addressing the sufficiency of the evidence of economic damages, both parties have focused exclusively on the evidence relating to the Plaintiff's need for future medical treatment. Dr. Steven Morgan testified as to the treatment that he had given the Plaintiff to date, including several surgeries to insert a "nail" into the Plaintiff's leg to support bone growth, to install an external fixation device, and several treatments to stave off infection. On direct examination, Morgan was asked "Is there any understanding of how much additional treatment he will need?," to which he answered:

> Well, right now we're in the phase of trying to train his regeneration, which means that where we transported the bone from the top of the his leg to the bottom of his leg, the bone reforms there but it's -- it reforms very slowly and so right now we're in the process of making his fixator looser and looser so it still provides stability but it also stresses the bone regeneration to try and make it form and look more like a normal bone.
>
> There is also some question as to whether or not we have achieved complete union in the distal part where we transported the new bone into the end of the bone where he was missing the bone and we've had to bone graft that several times and we're also trying to

---

[2]Because the Court Reporter has not corrected or certified the rough transcript, quotations herein from the trial record may be inexact.

3

> stress that to make sure that it heals. But we can't get an absolutely
> complete reading on that right now because of the amount of metal
> on there precluding us from getting -- seeing well the nonunion site
> or the delayed union site and normally we would get a CAT scan of
> this area but CAT scans don't work well when there's metal there
> and it obscures your view. So we're training it and eventually we're
> going to remove the frame, put him in a cast and go from there, but
> we've been encouraging him to try and walk on that to make that
> happen.

Morgan went on to acknowledge that there was still a possibility that the Plaintiff's leg might have to be amputated, explaining that infection could recur, that the limb might not ultimately prove to be sufficiently functional, or that "simply we may not be able to achieve union and the additional surgeries that are required to do that, you know, may not be palatable to him." However, all of these issues were stated as possibilities; Morgan gave no indication, nor was he asked, about the probabilities of such events occurring. When asked about the Plaintiff's permanent impairment, Morgan explained that the Plaintiff's damaged leg is now 2 inches shorter than the other, and that without additional surgery, that discrepancy will remain permanently. He testified that there were two possible ways to operate to rectify the discrepancy between leg lengths, but stated that he would not recommend the option of attempting to lengthen the shorter leg, and that most patients would not agree to submit to an operation to shorten the longer leg. Morgan testified that he expected to perform one additional surgery on the Plaintiff to remove the external fixation device, but did not explain what that surgery would specifically entail, nor did he specifically describe any additional surgeries or treatment that he expected to occur.

When asked about his own understanding of the need for future treatment, the Plaintiff stated "Probably some more surgeries, physical therapy, and probably have to retrain me on how

4

to, you know, move around the house, do things, you know, stuff like that." When asked how long that treatment would be expected to last, the Plaintiff replied that he had "no clue."

The Court finds that this evidence is insufficient to warrant an award of economic damages in excess of the sum of $324,375. Taken in the light most favorable to the Plaintiff, the evidence establishes that the Plaintiff will likely undergo one more surgery to remove the external fixation device, will be placed in a cast for a period of time, and will undergo significant physical therapy. However, nothing in the record would allow the jury to make any reasonable estimation of the costs of such treatment. For example, Morgan's testimony indicates that surgery to remove the fixation device is almost certain to occur, but the record does not reveal how intensive – much less how expensive – this surgery is expected to be. Similarly, the Plaintiff's own belief that he will need additional surgeries and physical therapy provides no indication as to the potential cost of these services. Thus, although there might be a factual predicate for the jury to <u>make</u> an award reflecting these future expenses, the record is insufficient to allow the jury to determine the reasonable <u>amount</u> of such expenses without engaging in outright speculation.

The Plaintiff argues that the jury appears to have reached their economic damage award by simply doubling the stipulated sum of the Plaintiff's medical expenses to date. The Plaintiff argues that this reflects a reasonable interpretation of the evidence, given that the Plaintiff has incurred those sums over the past two years, and faces several additional years of treatment and therapy. However, it is obvious that the treatment that the Plaintiff has already received – more than a dozen surgeries and lengthy hospitalization – is of an entirely different nature than the future therapeutic services he expects to undergo. Nothing in the record supports a conclusion by

5

the jury that the Plaintiff's future medical treatment will mirror, in type or cost, that which he has already undergone.

Absent some evidence in the record as to the expected costs of the Plaintiff's future medical treatment, the Court cannot say that the <u>amount</u> of the jury's economic damage award was supported by substantial evidence. Accordingly, the Court cannot sustain the jury's economic award.

In such circumstances, the Court can proceed in one of two ways: (i) the Plaintiff can consent to remittitur of the economic damages award to $324,275, the only amount supported by sufficient evidence the record; or (ii) in the event that the Plaintiff refuses to accept remittitur, the Court must direct a new trial focusing solely on the issue of the Plaintiff's economic damages. *See Hetzel v. Prince William County,* 523 U.S. 208, 210-12 (1998) (Seventh Amendment prevents the court from simply reducing an unsupported damage award to conform to the evidence; remittitur or new trial are the only alternatives). The Plaintiff shall make his election within 5 days of the date of this Order.

**B. Motion to Exceed Damages Cap**

The Plaintiff moves for a finding that the higher statutory cap on non-economic damages applies to the jury's award of $1 million. As stated above, Colorado law caps non-economic damage awards at $366,250, unless the Plaintiff shows, by clear and convincing evidence, "justification . . . therefor" to exceed that amount, in which case non-economic damages are absolutely capped at $732,500. C.R.S § 13-21-102.5(3)(a).

Precisely what "justification" must be found in order to apply the higher cap is unclear – it might refer to a finding that the Plaintiff's non-economic injuries are unusually severe, that there is

6

unusually detailed proof that the Plaintiff has suffered a monetary amount of damages that exceeds the cap, or that the Plaintiff has shown that the policy concerns underlying the cap are not appropriately applied in the particular situation. In *General Elec. Co. v. Niemet*, 866 P.2d 1361, 1365 (Colo. 1994), the Colorado Supreme Court cited to a legislative discussion where Senator Hefley explained the purpose of the statute's "relief valve" provision was to avoid "penaliz[ing] legitimate victims who have had extensive pain and suffering beyond which the $250,000 would cover." In *Colwell v. Mentzer Investments, Inc.*, 973 P.2d 631, 639 (Colo. App. 1998), the Colorado Court of Appeals affirmed a finding of justification for the higher cap based on a finding that the evidence at trial revealed that the plaintiff would "end up in a wheelchair," and would suffer diminished quality of life, among other things. These cases suggest that the "justification" that must be shown is that the Plaintiff has suffered non-economic damages whose value clearly and convincingly exceeds $250,000.

    Here, the evidence was largely undisputed as to the nature and extent of the Plaintiff's injuries. As a result of the accident, the Plaintiff suffered several severe injuries, most notably, catastrophic damage to his leg. Morgan testified that the severity of the Plaintiff's leg fracture was a "9 out of 10," and one of the most challenging cases he had seen. The Plaintiff was required to undergo some 13 surgeries over a period of two years, including the insertion and removal of a "nail" in the Plaintiff's leg, the transplant of a "flap" of skin from the Plaintiff's back to his leg to cover the open wound, a series of surgeries to treat an infection, and the surgical attachment and (future) removal of a fixator device. Morgan testified that the Plaintiff experienced the "normal" amount of pain that would accompany such injury and treatment. Morgan stated that the Plaintiff needed to take narcotic pain medication on a regular basis during

7

the treatment, and opined that the Plaintiff would continue to need such pain medication into the future. Morgan noted that, because of the distance over which the Plaintiff was required to grow new bone, it would take a full year or more before he could expect that bone to be fully healed. Morgan acknowledged that the Plaintiff's injuries would prevent him from walking normally again, and that there was a risk that a recurrence of the infection might ultimately require amputation of the Plaintiff's leg. The Plaintiff testified that he can no longer walk, sit, stand, sleep, or shower without substantial difficulty, and that he can no longer hike, camp, fish, or play sports. He worries about his ability to pay his bills, and about the extensive further rehabilitation he will have to undergo.

Although mindful of the inherent difficulty and subjectivity of placing a value on pain and suffering, the Court finds that the Plaintiff proved, by clear and convincing evidence, that his non-economic injuries exceed $366,250. The severity of the Plaintiff's injuries, the extensiveness of the medical treatment the Plaintiff was required to undergo, and the practical limitations on his future activities that have resulted all suggest that the pain and suffering experienced by the Plaintiff exceeds that which would be expected in the typical personal injury case. Assuming the $366,250 cap reflects the legislature's intent to identify the maximum non-economic recovery that should be available in a typical case, there is little question that the award to the Plaintiff should be permitted to exceed this amount. Beyond conclusory assertions that the evidence is insufficient, the Defendant does not point to anything in the record that suggests that the Plaintiff's injuries were anything other than severe and that they required prolonged treatment. Accordingly, the Court finds sufficient justification to exceed the $366,250 cap in C.R.S. § 13-21-102.5(3)(a), and reduces the jury's $1 million non-economic injury award to the absolute cap of $732,500.

8

For the foregoing reasons, the Defendant's Motion for New Trial **(# 120)** is **GRANTED.** Within 5 days of the date of this Order, the Plaintiff shall file a Notice indicating whether he consents to remittitur of the jury's economic damage award to $324,375, or whether he demands a new trial on the limited issue of the amount of his economic damages. The Plaintiff's Motion for Finding of Justification for Exceeding **(# 121)** the statutory cap on non-economic damages is **GRANTED**, and the Court will reduce the jury's award of non-economic damages from $1 million to $732,500.

Dated this 17th day of December, 2007

**BY THE COURT:**

*Marcia S. Krieger*

Marcia S. Krieger
United States District Judge